**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| SPECIAL COUNSEL, | DOCKET NUMBER |
| | CB-1208-16-0028-U-2 |
| Petitioner, | |
| v. | |
| | DATE: November 14, 2016 |
| DEPARTMENT OF JUSTICE, | |
| Agency. | |

# THIS STAY ORDER IS NONPRECEDENTIAL[*]

<u>Paul David Metcalf, Jr.</u>, Esquire, and <u>Sarah Black</u>, Esquire, Washington, D.C., for the petitioner.

<u>Jill A. Weissman</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**ORDER ON STAY REQUEST**

¶1    Pursuant to 5 U.S.C. § 1214(b)(1)(B), the Office of Special Counsel (OSC) has requested a 90-day extension of the previously granted 45-day stay of the agency's appointment of two unnamed individuals to Assistant Director positions

---

[*] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

in the International Criminal Investigative Training Assistance Program (ICITAP) while OSC completes its investigation and determines whether to seek corrective action. For the reasons discussed below, we GRANT OSC's request.

**BACKGROUND**

¶2 In a September 28, 2016 stay request, OSC alleged that it had reasonable grounds to believe that the agency's impending appointment of two individuals to Assistant Director positions in ICITAP would violate 5 U.S.C. § 2302(b)(6). OSC alleged that, in April 2015, the agency issued vacancy announcements for two GS-15 Assistant Director positions in ICITAP. For both vacancy announcements, the agency advertised under its delegated examining authority (DEU) and merit promotion procedures. Veteran A and Veteran B applied for both positions. It appears that they were afforded their statutory right to compete under 5 U.S.C. § 3304(f) for the merit promotion announcement, and they were both afforded their veterans' preference points in the DEU announcement. The agency rated both veterans "Best Qualified" and referred them for consideration under both the DEU and merit promotion announcements. Both were interviewed.

¶3 Less than a week later, according to OSC, ICITAP officials met with Veteran A and Veteran B individually and told them both that the highest-ranked candidate was a nonveteran who could not be hired unless Veteran A and Veteran B withdrew from competition. ICITAP officials suggested that the two candidates weigh their options and confer with each other but, ultimately, they did not withdraw from competition. ICITAP attempted to hire its preferred candidate anyway, but was prevented from doing so by human resources officials. The agency eventually canceled the vacancy announcements without making a selection. In December 2015, OSC notified the agency that it was investigating whether prohibited personnel practices had occurred in connection with the hiring process for the Assistant Director positions.

¶4        In June 2016, while OSC's investigation was ongoing, the agency readvertised both positions under both DEU and merit promotion procedures.  In the original 2015 advertisements, command level law enforcement experience had been one of the various factors the agency used to rank applicants.  The revised 2016 advertisements, however, had been rewritten so that command level law enforcement experience was a minimum qualification required for the positon.

¶5        Veteran A and Veteran B applied for the positions but were found unqualified because they lacked command level law enforcement experience.  In fact, no veterans who applied for the positions in 2016 were found qualified.  OSC informed the agency that it was investigating the 2016 hiring process for possible prohibited personnel practices, and the parties reached an informal agreement that the agency would not fill the positions until OSC had "adequately investigated."  OSC represented in its initial stay request that the agency recently had repudiated the agreement and announced its intent to move forward with the appointments.

¶6        Chairman Grundmann granted OSC's stay request.  On October 28, 2016, OSC timely requested a 90-day extension of the request.  *Special Counsel v. Department of Justice*, MSPB Docket No. CB-1208-16-0028-U-2, Stay Request File (SRF2), Tab 1.  The agency timely opposes OSC's request for an extension or, in the alternative, requests that any extension be limited to 30 days.  SRF2, Tab 2.

## ANALYSIS

¶7        A stay granted pursuant to 5 U.S.C. § 1214(b)(1) is issued to maintain the status quo ante while OSC and the agency involved resolve the disputed matter.  *Special Counsel v. Department of Transportation*, 74 M.S.P.R. 155, 157 (1997).  The purpose of the stay is to minimize the consequences of an alleged prohibited personnel practice.  *Id.*  In evaluating a request for an extension of a stay, the Board will view the request in the light most favorable to OSC and will grant a

stay extension request if OSC's prohibited personnel practices claim is not clearly unreasonable. *Id.* at 158. OSC's initial stay request was based on its implicit allegation that the agency potentially was violating or about to violate 5 U.S.C. § 2302(b)(6) by attempting to manipulate the hiring process for the positions in question to circumvent veterans' preference requirements and reach pre‑selected nonveteran candidates. The agency notes that this is the first case in which OSC has requested a stay that did not involve an allegedly retaliatory action taken against an employee. SRF2, Tab 2 at 6-7. In the typical stay case, a stay maintains the status quo ante to avoid harm to the employee while an investigation is ongoing. In this situation, though, a stay does not operate to protect any individual from harm. However, viewing the facts of the case in the light most favorable to OSC, we find that OSC's claim that the agency has committed or is about to commit a prohibited personnel practice under 5 U.S.C. § 2302(b)(6) is not clearly unreasonable. *See Special Counsel ex rel. Tines v. Department of Veterans Affairs*, 98 M.S.P.R. 510, ¶ 5 (2005) (stating that a stay request need merely fall within the range of rationality to be granted); *Special Counsel v. Department of Transportation*, 74 M.S.P.R. at 157 (stating that a stay proceeding is not intended to be a substitute for a complete hearing on the merits of a prohibited personnel practice claim). Under the unique circumstances of this case and in light of the fact that the evidentiary record supporting OSC's initial stay request has not changed significantly since the stay went into effect, a further stay is appropriate. *See Special Counsel ex rel. Meyers v. Department of Housing & Urban Development*, 111 M.S.P.R. 48, ¶ 16 (2009).

¶8        A separate determination must be made on the length of the requested stay. *Special Counsel ex rel. Waddell v. Department of Justice*, 105 M.S.P.R. 208, ¶ 5 (2007). The Board may extend the period of a stay for any period that it considers appropriate. 5 U.S.C. § 1214(b)(1)(B); *Special Counsel ex rel. Meyers*, 111 M.S.P.R. 48, ¶ 17.

¶9	OSC contends that the agency responded to an information request with a flash drive containing the equivalent of thousands of pages of documents, which OSC is reviewing.  SRF2, Tab 1 at 5.  OSC asserts that, following its review of the documents, it will need to plan what additional investigation is required, who should be interviewed, and whether additional information should be requested.  *Id.*  OSC further asserts that it has conducted some witness interviews, is arranging others, and plans to interview the responsible managers.  *Id.*

¶10	The agency requests that the Board deny OSC's extension request or, in the alternative, grant only a limited extension for 30 days.  SRF2, Tab 2.  The agency asserts that OSC began investigating this case in November 2015, and has made multiple requests for information to which the agency has responded promptly and completely.  *Id.* at 4-6.  The agency also states that OSC did not begin conducting witness interviews until a few days before filing its initial stay request and did not attempt to schedule interviews with management witnesses until October 19, 2016.  *Id.* at 5-6.  The agency asserts, moreover, that granting a lengthy extension and keeping open the positions in question works a hardship on the agency, because the vacancies are two Assistant Director positions in an office that only has three Assistant Director positions, and they already have been vacant for an extended period of time.  *Id.* at 5.

¶11	The agency's point about the amount of time this case has taken already is noted.  It is the intent of Congress that stays not be extended for prolonged periods of time.  *Special Counsel v. Department of the Treasury*, 71 M.S.P.R. 419, 421 (1996).  Moreover, the Board is obligated to press OSC to present corrective action cases in a timely manner.  *Id.* at 422.  However, the fact that OSC recently received a large quantity of information to review and needs to interview a number of witnesses is a factor in favor of granting its request for an extension of the stay.  *See Tines*, 98 M.S.P.R. 510, ¶¶ 4-6 (granting a request for a 70‑day extension of a stay where OSC recently received 600 pages of documents to review from the agency and needed to conduct witness interviews).  Moreover,

if the Board were to accede to the agency's request that we extend the stay for only 30 days, or if we decided sua sponte to grant an extension for some amount less than 90 days, much of the stay would take place during the winter holiday period when it is difficult to find mutually agreeable times to interview witnesses and OSC would likely be unable to complete its investigation. *See Special Counsel v. Department of Transportation*, 59 M.S.P.R. 559, 560 (1993) (finding that a 90-day extension of a stay was appropriate because of, inter alia, the difficulty inherent in scheduling investigatory interviews during the holiday season). For these reasons, and viewing the record in the light most favorable to OSC, we find that OSC has shown reasonable cause to justify extending the stay an additional 90 days.

¶12 However, given our obligation to press OSC to present corrective action cases in a timely manner and in view of the agency's assertions of hardship and the year that OSC has already spent looking into this matter, we expect that OSC should be able to complete, or nearly complete, its investigation before the extension expires.

## ORDER

¶13 Accordingly, a 90-day stay of the agency's impending appointments to fill the two Assistant Director vacancies in ICITAP is GRANTED. The stay shall be in effect from November 15, 2016, through and including February 12, 2017. It is further ORDERED that:

    (1) The terms and conditions of the stay issued on September 30, 2016, are extended through and including February 12, 2017.

    (2) Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order; and

    (3) Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B) must be received by the Clerk of the Board and the

agency, together with evidentiary support, on or before January 28, 2017.  5 C.F.R. § 1201.136(b).  Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) must be received by the Clerk of the Board, together with any evidentiary support, on or before February 4, 2017.


FOR THE BOARD:                          _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.